UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| FRED NEKOUEE, individually, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. 2:18-cv-02316 |
| | : | |
| LEAWOOD TCP, LLC, a Delaware limited liability company; | : | |
| | : | |
| PANERA, LLC, a Delaware limited liability company; and | : | |
| | : | |
| DICK'S SPORTING GOODS, INC. OF DELAWARE, a Delaware corporation; | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, LEAWOOD TCP, LLC, a Delaware limited liability company; PANERA, LLC, a Delaware limited liability company; and DICK'S SPORTING GOODS, INC. OF DELAWARE, a Delaware corporation,   (sometimes referred to as "Defendants"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the County of Hillsborough.

2.     Defendant Leawood TCP, LLC's property, the Town Center Plaza, is located at

5000 W. 119th Street, Leawood, Kansas 66209   ("Town Center Plaza").

3.      The Defendant Leawood TCP, LLC's property, the Town Center Plaza, is located in and does business within this judicial district.

4.      The Defendant Panera, LLC owns, leases, leases to, or operates a Panera restaurant in the Town Center Plaza ("Panera").

5.      The Defendant Dick's Sporting Goods, Inc. of Delaware owns, lease, leases to, or operates a Dick's Sporting Goods store in the Town Center Plaza ("Dick's Sporting Goods").

6.      Venue is proper in the District of Kansas, Kansas City Division because the situs of the Defendants' property, restaurant and store lie in this judicial district.

7.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   *See also* 28 U.S.C. § 2201 and § 2202.

8.      Defendants own, lease, lease to, or operate places of public accommodation, the Town Center Plaza, the Panera restaurant, and Dick's Sporting Goods, as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

9.      Defendants are responsible for complying with the obligations of the ADA.

10.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

11.     Mr. Nekouee travels to the Kansas City metropolitan area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live

in such area.

12.     The Plaintiff, Fred Nekouee, has visited, bought goods, and sought to avail himself of the services at the Dick's Sporting Goods on March 28, 2018 and at Panera on March 29, 2018 in the Town Center Plaza, which form the basis of this lawsuit, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to the heavy equipment auction and dealerships, and to the home of his uncle and cousin he visits in the Kansas City metropolitan area, and to the hotels he stays at in the Kansas City metropolitan area.

13.     The Plaintiff has definite plans and flight reservations to return to the Kansas City metropolitan area in July 2018.

14.     The Plaintiff likes to buy gifts for his family while he is traveling, and Dick's Sporting Goods has suitable gifts and goods for his family and for him.

15.     The Plaintiff plans to return to shop at the Dick's Sporting Goods in the Town Center Plaza, but is deterred from shopping there until the barriers to access he encountered there are removed.

16.     The Plaintiff enjoys the excellent food at Panera, and since it is a chain, he knows that he can count on the quality of its food.

17.     The Plaintiff is deterred from returning to this Panera in the Town Center Plaza until it is made accessible to him in his wheelchair.

18.     The Plaintiff plans to return to the Town Center Plaza on his upcoming visits to the Kansas City metropolitan area.

19.     The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety in his

3

wheelchair, impaired his ability or those accompanying him to park a vehicle due to a lack of signage, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, impaired his use of the men's and women's restrooms in Dick's Sporting Goods and the men's restroom in Panera, and have impaired his access to the goods and services at Dick's Sporting Goods, Panera and the Town Center Plaza.

20.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

21.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

22.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep cross slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

23.     On his visits to the Dick's Sporting Goods and Panera at the Town Center Plaza, the Plaintiff encountered changes in elevation, excessively steep running slopes and cross slopes in its parking lot, access aisles, ramps and walking surfaces (sidewalks).

24.     The Plaintiff encountered barriers to access in the men's and women's restrooms in Dick's Sporting Goods in the Town Center Plaza.

25.     Upon encountering barriers to access in the men's restroom in Dick's Sporting Goods, the door and hardware to the accessible toilet compartment, which door the Plaintiff could not fully close, the Plaintiff tried the women's restroom in Dick's Sporting Goods.

26.     The Plaintiff also encountered barriers to access in the men's restroom in Panera in

the Town Center Plaza.

27.     The Plaintiff is deterred from visiting the Town Center Plaza, Dick's Sporting Goods, and Panera even though he enjoys their goods and services, because of the difficulties he will experience there until the property and places of public accommodation are made accessible to him in a wheelchair.

28.     The Plaintiff is deterred from visiting the places of public accommodation in the Town Center Plaza, even though it is close to the heavy equipment auction, heavy equipment dealerships, the home of his uncle and cousin in the Kansas City metropolitan area, and to the hotels he stays at in such area, because of the difficulties he will experience there in the parking lot, access aisles, ramps, walking surfaces (sidewalks), and restrooms until the property is made accessible to him in a wheelchair.

29.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 35 of this Complaint.

30.     Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

31.     Fred Nekouee desires to visit the Town Center Plaza, Dick's Sporting Goods, and Panera in the Town Center Plaza not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

32.     The Defendants have discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities,

privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

33.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

34.     Preliminary inspections of the Town Center Plaza, Dick's Sporting Goods and Panera in the Town Center Plaza show that violations exist.

35.     The violations that the Plaintiff, Fred Nekouee, personally encountered or observed on his visits to the Town Center Plaza, Dick's Sporting Goods, and Panera in the Town Center Plaza include, but are not limited to:

**PARKING AREA**

a.  In the parking lot, the parking spaces for disabled patrons in front of Dick's Sporting Goods do not have the signage and international symbol of accessibility, in violation of Federal Law 2010 ADAAG 502.6 and 703.7.2.1.   The lack of signage made it difficult for the Plaintiff to locate a parking space for a disabled individual like him.

b.  In the parking lot, the parking space for disabled patrons in front of Dick's Sporting Goods shown in the photographs below taken in March 2018, has areas with an excessively steep running slope, as steep as 1.19.6 (5.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4. This steep slope made it very difficult for the Plaintiff, a disabled individual who requires a wheelchair for mobility, to stay stable while loading and unloading from his vehicle.   This condition deters him and other disabled individuals like him who require the use of a wheelchair for

mobility from visiting Dick's Sporting Goods.





c.   In the parking lot, the parking space for disabled patrons in front of Dick's Sporting

Goods shown in the photographs below has an area with an excessively steep running

slope, as steep as 1:27 (3.7%), which slope is steeper than the maximum allowed slope of

1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.   This steep slope makes it

very difficult for a disabled individual who requires a wheelchair for mobility to stay stable

while loading and unloading from a vehicle.    The Plaintiff observed this steep slope.    This condition deters him and other disabled individuals like him who require the use of a wheelchair for mobility from visiting Dick's Sporting Goods.





d.   In the parking lot, the parking space for disabled patrons in front of Dick's Sporting Goods shown in the photograph in subparagraph (c) above has an area with an excessively steep cross slope, as steep as 1:13.3 (7.5%), which slope is steeper than the maximum

allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4. This steep slope makes it very difficult for a disabled individual who requires a wheelchair for mobility to stay stable while loading and unloading from a vehicle. The Plaintiff observed this steep slope. This condition deters him and other disabled individuals like him who require the use of a wheelchair for mobility from visiting Dick's Sporting Goods.

e.     In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of Dick's Sporting Goods is as steep as 1:21.3 (4.7%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4. The Plaintiff encountered this condition, and it made him unstable in his wheelchair. Such steep slope deters him and other disabled individuals who require a wheelchair for mobility from visiting Dick's Sporting Goods.

f.     In the parking lot, the adjoining gutters and walking surface to the ramp in front of Dick's Sporting Goods has a counter slope as steep as 1:12.5 (8%), which slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010 ADAAG § 406.2. The Plaintiff observed this condition, which condition makes it difficult for a disabled individual who requires a wheelchair for mobility from moving up or down the ramp and walking surface.

g.     The running slope of the accessibility ramp in front of Dick's Sporting Goods is as steep as 1:6.4 (15.6%), which slope is dangerously steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2. The Plaintiff encountered this steep slope in his wheelchair, and he required assistance to move up the access ramp to enter the Dick's Sporting Goods.

h.     In the parking lot, the parking space for disabled patrons in front of Panera, shown

in the photographs below taken in March 2018, has areas with an excessively steep running slope, as steep as 1:11.6 (8.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.   This steep slope made it very difficult for the Plaintiff, a disabled individual who requires a wheelchair for mobility, to stay stable while unloading and loading from and into his vehicle.   This steep slope deters the Plaintiff from visiting Panera.





i.   In the parking lot, the parking space for disabled patrons in front of Panera shown in the photograph above in subparagraph (h) has areas with an excessively steep cross slope, as steep as 1:27.8 (3.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.   This steep cross slope made it difficult for the Plaintiff to avoid tipping over sideways in his wheelchair in this access aisle.

j.   In the parking lot, the parking space for disabled patrons in front of Panera shown in the photographs below taken in March 2018, has areas with an excessively steep cross slope, as steep as 1:17.2 (5.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him and others disabled individuals like him who require a wheelchair for mobility from visiting Panera.





k.    In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of Panera is as steep as 1:25 (4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal law 2010 ADAAG § 502.4.   The Plaintiff was unstable in his wheelchair on this access aisle due to such steep running slope.

l.    In the parking lot, the cross slope of the access aisle serving the disabled parking spaces in front of Panera is as steep as 1:23.8 (4.2%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4 The Plaintiff was unstable in his wheelchair on this access aisle due to such steep cross slope.

m.    The cross slope of the walking surface in front of Panera is as steep as 1:30.3 (3.3%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 403.3.   The Plaintiff was unstable in his wheelchair on

this walking surface due to such steep cross slope.

n.   The slope of the walking surface in front of Panera, shown in the photographs below taken in March 2018, is as steep as 1:13.7 (7.3%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 403.3. It was very difficult for the Plaintiff to remain stable in his wheelchair on this walking surface.





o.   The running slope of the accessibility ramp in front of Panera is as steep as 1:9.3 (10.8%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2.   The Plaintiff had great difficulty ascending the ramp to access Panera.

p.   The slope of the accessibility ramp curb sides or flares in front of Panera is as steep as 1:5.5 (18.2%), which slope is dangerously steeper than the maximum allowed slope of

1:10 (10%), in violation of Federal Law 2010 ADAAAG § 406.3.   The Plaintiff observed this condition, which steep slope does not accommodate maneuvering for a disabled individual in a wheelchair.

**PANERA BREAD ENTRANCE DOOR**

q.   The force needed to open the entrance door to Panera is 8 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff had difficulty opening the entrance door to Panera, and he required assistance to open this door.

**MEN'S RESTROOM IN PANERA**

r.    The force needed to open the entrance door to men's restroom in Panera is 9 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff had difficulty opening this door to the men's restroom in Panera, and he required assistance to open this door.

s.   The men's restroom in Panera does not have the signage and international symbol of accessibility, in violation of Federal Law 2010 ADAAG § 703.7.2.1.   The Plaintiff observed this condition.

t.    In the men's restroom in Panera, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 16 inches and less than the minimum clearance of 18 inches, in violation of Federal Law 2010 ADAAG § 404.2.4. This condition made it more difficult for the Plaintiff to maneuver his wheelchair to attempt to open this door.

u.    In the men's restroom in Panera, the accessible stall width is 56 inches, which width is less than the required minimum width of 60 inches for a wheelchair accessible compartment, in violation of Federal Law 2010 ADAAG §§ 604.8.1 and 304.3.   It was difficult for the Plaintiff to maneuver his wheelchair in this compartment due to the lack of clear floor space.

v.    In the men's restroom in Panera, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, and the latch provided requires tight grasping and cannot be opened by a loose grip or closed fist, in violation of Federal Law 2010 ADAAG §§ 309.4, 404.2.7 and 604.8.1.2.   The Plaintiff could not fully close the door to this accessible toilet compartment.

w.    In the men's restroom in Panera, the rear wall grab bar only extends 15 inches and 21 inches from the centerline of the water closet and does not extend the minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010 ADAAG § 604.5.2.   This rear wall grab bar made it very difficult for the Plaintiff to position himself to use the toilet.

x.    In the men's restroom in Panera, the lavatory pipes under the sink are not insulated, in violation of Federal Law 2010 ADAAG §§ 606.3 and 606.5.   The Plaintiff, in his wheelchair, used this sink and risked burning the skin on his legs due to the lack of insulation on the lavatory pipes.

y.    In the men's restroom in Panera, the toilet paper dispenser centerline is 11 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches, in violation of Federal Law 2010 ADAAG § 604.7. The Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

z.     In the men's restroom in Panera, the toilet seat cover dispenser outlet is 60 inches above the finish floor and not within a minimum of 15 inches and a maximum of 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 308.2.1.   The Plaintiff could not reach the toilet seat covers from his wheelchair.

aa.   In the men's restroom in Panera, the bottom edge of the mirror's reflecting surface is 43 inches above the finish floor, which height is higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 603.3.   The Plaintiff could not see his full face in the mirror from his wheelchair.

bb.   In the men's restroom in Panera, the door hardware (latch or handle) requires tight grasping, pinching, or twisting of the wrist and it cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010 ADAAG §§ 309.4 and 404.2.7.   The Plaintiff could not fully close or latch this door shut when he used the toilet.

cc.   In the men's restroom in Panera, the coat hook is installed at 66 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG § 603.4.   The Plaintiff, in his wheelchair, could not reach or use this coat hook.

**WOMEN'S RESTROOM IN PANERA**

dd.   The women's restroom in Panera does not have the signage and international symbol of accessibility, in violation of Federal Law 2010 ADAAG § 703.7.2.1.   The Plaintiff observed this lack of signage and symbol.

**MEN'S RESTROOM IN DICK'S SPORTING GOODS**

ee.   The force needed to open the entrance door to the men's restroom in Dick's

Sporting Goods is 9 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff had difficulty opening this door to the men's restroom in Dick's Sporting Goods, and he required assistance to open this door.

ff.    In the men's restroom in Dick's Sporting Goods, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010 ADAAG § 604.8.1.2.   The Plaintiff could not close the door to this compartment.

gg.   In the men's restroom in Dick's Sporting Goods, the door latch is broken and requires tight grasping and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010 ADAAG §§ 309.4 and 404.2.7.

**WOMEN'S RESTROOM IN DICK'S SPORTING GOODS**

hh. In the women's restroom in Dick's Sporting Goods, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010 ADAAG § 604.8.1.2.    The Plaintiff could not fully close this door on his own and required assistance to close it.

ii.    In the women's restroom in Dick's Sporting Goods, the door hardware (latch or handle) requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010 ADAAG §§ 309.4 and 404.2.7.

36.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design,

as promulgated by the U.S. Department of Justice.

37. The discriminatory violations described in paragraph 35 are not an exclusive list of the Defendants' ADA violations. Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

38. Defendants have discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of their places of public accommodation or commercial facilities in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

39. Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence

of auxiliary aids and services.

40.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

41.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

42.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

43.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

44.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Dick's Sporting

Goods and Panera in the Town Center Plaza and adjacent parking lot and walking surfaces at the Town Center Plaza, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

45.   Millions of Americans require the use of a wheelchair for mobility.

46.   The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

47.   Removing existing architectural barriers to access under Title III of the ADA will be good for the business of Dick's Sporting Goods and Panera in the Town Center Plaza and of the Town Center Plaza.

**WHEREFORE,** Plaintiff respectfully requests:

a.   The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.   Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to require the Defendants to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

  c.  An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

  d.  Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

  Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Kansas City, Kansas as the place of trial for this action.

    Respectfully submitted,


    <u>s/Robert J. Vincze</u>
    Robert J. Vincze (KS #14101)
    Law Offices of Robert J. Vincze
    PO Box 792
    Andover, Kansas 67002
    Phone: 303-204-8207
    Email: vinczelaw@att.net

    *Attorney for Plaintiff Fred Nekouee*